MARY E. CONWAY *vs.* MINNIE O'BRIEN.

Suffolk.    May 22, 1929. — December 30, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Unlawful Interference. Actionable Tort. Contract,* To marry.

An action cannot be maintained merely for unlawful interference with a contract to marry, even though such interference be malicious and without probable cause. PIERCE and SANDERSON, JJ., dissenting.

TORT. Writ dated October 23, 1928.

The plaintiff's amended declaration is described in the opinion. The defendant demurred. The demurrer was heard in the Superior Court by *Weed,* J., and was over-

ruled. The judge thereupon reported the action for determination by this court.

The case was submitted on briefs at the sitting of the court in May, 1929, and afterwards was submitted on briefs to all the Justices.

*E. M. Dangel & L. E. Sherry,* for the plaintiff.

*W. J. Bradley,* for the defendant.

CROSBY, J. This is an action of tort to recover damages. The amended declaration alleges that the plaintiff had "entered into a contract with one Michael Carroll, whereby they mutually agreed to marry each other, that the defendant, well knowing of the existence of the said agreement between the said plaintiff and the said Michael Carroll, maliciously and without probable cause, procured, influenced and obtained the said Michael Carroll to breach the said agreement, and through the procurement by the defendant, the said Michael Carroll did breach the agreement and refused to perform the same, wherefore the plaintiff suffered great and severe injuries and damage . . ." The trial judge overruled a demurrer to the declaration and reported the case for the determination by this court. The question is whether an action can be maintained against a third person for maliciously interfering with, and procuring a breach of, a contract to marry. The general rule is well established that "The right of one to have the benefit of his contract is a right which can lawfully be interfered with only by one who is acting in the exercise of an equal or superior right which comes in conflict with the other." *Moore Drop Forging Co.* v. *McCarthy,* 243 Mass. 554, 562. *Folsom* v. *Lewis,* 208 Mass. 336, 338.

It is also held that no one with impunity can by the use of slanderous or libellous words concerning one of the parties induce the other party to repudiate a contract to marry. In such a case an action will lie for slander or libel but not for inducing a breach of the contract. *Leonard* v. *Whetstone,* 34 Ind. App. 383, 386. *Overhultz* v. *Row,* 152 La. 9, 12. *Homan* v. *Hall,* 102 Neb. 70. *Ableman* v. *Holman,* 190 Wis. 112.

In Quebec it has been held that a parent may be liable in case a minor child wrongfully breaks a contract to marry

even without the active interference of the parent. *Internoscia* v. *Bonelli,* 28 Que. Super. 58. *Delage* v. *Normandeau,* 9 Que. Q. B. 93. But these decisions seem to be based upon a law of the Province making a parent liable for the torts of his minor child, the breach of promise being regarded as a tort.

In *Homan* v. *Hall, supra,* it was held that a betrothed cannot maintain an action for damages against a third party not based on slander but solely because the man she had agreed to marry was induced by the defendant to breach the contract. In that case it was said at pages 72 and 73, "The right of engaged parties to ask advice of their friends and the right of the friends to give advice has never been denied. To hold that a third person may be subject to answer in damages for advising or inducing an engaged person to break the engagement might result in a suit by every disappointed lover against his successful rival. The state has an interest in the marriage relation, and until the marriage is solemnized no domestic rights exist, and therefore cannot be violated." In *Ableman* v. *Holman, supra,* it was held that no legal liability attaches for inducing a breach of a contract to marry in the absence of slanderous or libellous statements, duress, or other unlawful means. In *Leonard* v. *Whetstone, supra,* it was said at page 386, "But if a person is induced to refuse to comply with his agreement to marry by false and slanderous charges made against the other party to the agreement by a third person, the action is not against the third person for causing a breach of the contract, but for slander or libel, as the case might be." See also *Walker* v. *Cronin,* 107 Mass. 555, 564. *Glamorgan Coal Co. Ltd.* v. *South Wales Miners' Federation,* [1903] 2 K. B. 545. *Lumley* v. *Gye,* 2 El. & Bl. 216, 239. Certain text books declare that no action lies for inducing a breach of a contract to marry. See Cooley on Torts (3rd ed.) 494; Schouler on Marriage, Divorce, Separation and Domestic Relations (6th ed.) § 1288; Burdick on Torts (4th ed.) 472. See also *Case* v. *Smith,* 107 Mich. 416; *Davis* v. *Condit,* 124 Minn. 365.

On the other hand, it was held in *Gunn* v. *Barr* [1926] 1 D. L. R. 855, by the Appellate Division of the Alberta Supreme Court, that a brother of the plaintiff's betrothed

was liable for inducing a breach of a contract to marry made by his brother, and that the action rested upon the same considerations as an action for inducing a breach of any contract. This conclusion is wholly at variance with what has been decided in other jurisdictions and finds no support by any other court so far as we are aware.

Upon grounds of public policy we are of opinion that this action cannot be maintained. Although marriage is a civil contract, it is a relation between the parties which intimately concerns the welfare of society and the State, and the parents and other relatives and friends of the contracting parties ought to be free to advise them without incurring a liability to be called upon to respond in damages where such advice results in the breach of the contract to marry.

Upon consideration of the authorities and of the principles involved, we are of opinion that the ends of justice will be best served by holding that no action of this kind can be upheld. To decide otherwise would be to open the door to unwarranted litigation, to promote unfortunate engagements and to encourage unjustifiable attacks upon any relative or friend who could respond in damages. We are of opinion that a plaintiff is given an adequate remedy by having a right of action for slander or libel, as the case may be, whereby a contract to marry has been broken. The result reached is not contrary to what was decided in *Lukas v. Tarpilauskas*, 266 Mass. 498. In the opinion of a majority of the court the demurrer should have been sustained, and as the declaration does not set forth a cause of action, judgment is to be entered for the defendant.

*So ordered.*

PIERCE, J. I regret that I am unable to agree with the opinion.

The case is before us after an order of a judge of the Superior Court overruling a demurrer to an amended declaration, without further proceedings, on report of the single question raised by the demurrer to the amended declaration. The pleadings as amended are made a part of the report. If the order overruling the demurrer was correct,

the order is to stand; otherwise, such order is to be entered as law and justice require.

The amended declaration reads: "The plaintiff says that she had entered into a contract with one Michael Carroll, whereby they mutually agreed to marry each other, that the defendant, well knowing of the existence of the said agreement between the said plaintiff and the said Michael Carroll, maliciously and without probable cause, procured, influenced and obtained the said Michael Carroll to breach the said agreement, and through the procurement by the defendant, the said Michael Carroll did breach the agreement and refused to perform the same, wherefore the plaintiff suffered great and severe injuries and damage, all to the amount as alleged in her writ." The defendant's demurrer reads: "And now comes the defendant in the above entitled matter and demurs to the plaintiff's declaration, and says that the matters contained in the plaintiff's declaration are insufficient in law to enable the plaintiff to maintain her action."

The facts well pleaded in the amended declaration which are admitted by the demurrer are that the defendant knew that the plaintiff and Michael Carroll had entered into a mutually enforceable contract to marry each other; that well knowing the existence of said contract she maliciously and without probable cause procured, influenced and obtained the said Michael Carroll to breach the agreement and that the plaintiff thereby suffered substantial damage.

I put to one side cases where the facts disclose an action for slander *per quod matrimonium amisit,* cases which have to do with loss of consortium after marriage, and cases of conspiracy to induce a breach of a contract to marry. *Wicks* v. *Shepherd,* (1629) Cro. Car. 155; 79 Eng. Reprint, 735. *Sheperd* v. *Wakeman,* (1662) 1 Sid. 79; 82 Eng. Reprint, 982. *Harrison* v. *Cage,* (1698) Carth. 467. *Winsmore* v. *Greenbank,* Willes, 577, 583. *Walker* v. *Cronin,* 107 Mass. 555, 567. *Harriott* v. *Plimpton,* 166 Mass. 585. *Multer* v. *Knibbs,* 193 Mass. 556.

In the consideration of the question whether as against a demurrer the amended declaration states a cause of ac-

tion, I assume the plaintiff has a cause of action against Michael Carroll for his default, and that the word "maliciously" as used in the declaration connotes that the acts done or procured to be done by the defendant which induced Michael Carroll wrongfully to breach his agreement to marry the plaintiff were done or caused to be done by the defendant intentionally and without justifiable cause. *Wheeler-Stenzel Co.* v. *American Window Glass Co.* 202 Mass. 471, 472, 473.

It is a rule of general application that an action will lie for interference with enforceable contractual rights if there be no sufficient justification for the interference. *Walker* v. *Cronin, supra. Wheeler-Stenzel Co.* v. *American Window Glass Co. supra. Angle* v. *Chicago, St. Paul, Minneapolis & Omaha Railway,* 151 U. S. 1, 13. *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.* 220 U. S. 373, 394. *Lumley* v. *Gye,* 2 El. & Bl. 216. *Bowen* v. *Hall,* 6 Q. B. D. 333. *Quinn* v. *Leatham,* [1901] A. C. 495. *National Phonograph Co. Ltd.* v. *Edison-Bell Consolidated Phonograph Co. Ltd.* [1908] 1 Ch. 335, 366, 367. *Jones* v. *Stanly,* 76 N. C. 355. *Bixby* v. *Dunlap,* 56 N. H. 456. As applied to contracts to marry, the rule is subject to some exception in the nature of privilege. For example, a parent, a guardian or friend may honestly and disinterestedly advise his child or friend to break off an imprudent or improvident engagement. *Walker* v. *Cronin, supra. Harriott* v. *Plimpton, supra. Lukas* v. *Tarpilauskas,* 266 Mass. 498. It would seem that suitors are within the privilege if knowing of the engagement they persist in their attentions until they are accepted, even though the result is a breach of an existing contract to marry. *National Phonograph Co. Ltd.* v. *Edison-Bell Consolidated Phonograph Co. Ltd. supra,* at page 350. *Homan* v. *Hall,* 102 Neb. 70. I think mere intermeddlers are not privileged to create a reason, and by means of it induce the breaking of a marriage contract, whatever may be their motives or desire to benefit the party who is induced to break the contract. *Read* v. *Friendly Society of Operative Stonemasons of England, Ireland & Wales,* [1902] 2 K. B. 732, 739.

I am unable to follow the cases of *Ableman* v. *Holman,* 190 Wis. 112, and *Homan* v. *Hall, supra,* in so far as they decide that in no circumstances should the intentional inducement of a breach of contract to marry constitute in law an actionable wrong, unless slander, libel or coercion is resorted to. The statement in *Homan* v. *Hall, supra,* at page 73, that "The State has an interest in the marriage relation, and until the marriage is solemnized no domestic rights exist, and therefore cannot be violated," contains a *non sequitur,* and moreover is incompatible with the maintenance of the action for breach of the contract to marry. *Wightman* v. *Coates,* 15 Mass. 1, 3. *Stretch* v. *Parker,* 1 Roll. Abrid. 22 (20). *Baker* v. *Smith,* (1651) Style, 295. *Holcroft* v. *Dickenson,* Carter's Rep. (Eng.) 233.

Finally, I do not think the conclusion that the action cannot be maintained on any evidence admissible under the declaration can be supported by the authority of "public policy" alone.

Mr. Justice Sanderson authorizes me to say that he agrees with the foregoing.